# AFFIDAVIT

I, Andrew W. Kremer, having been duly sworn, depose and state:

1. I am a United States Postal Inspector, having been so employed since May 19, 2012. I am presently assigned to the Cincinnati Field Office, Pittsburgh Division of the United States Postal Inspection Service (USPIS) with investigative responsibility for southwest Ohio and northern Kentucky. Part of my investigative responsibility involves the use of the United States Mail in the illegal transporting of narcotics and other dangerous controlled substances and financial proceeds relating thereto.

2. Your Affiant completed United States Postal Inspection Service Basic Training in May 2012. The training involved narcotic investigation techniques, chemical field tests and training in the detection and identification of controlled substances being transported in the United States Mail. In addition to this formal training, your Affiant has worked since May 2012 with various federal, state and local law enforcement agencies in the investigation of the transportation of illegal drugs and their identification.

3. This Affidavit is prepared and submitted in support of an application for an anticipatory search warrant for a residence located at **612 20th Ave, Middletown, OH 45044 all outbuildings and curtilage**. **612 20th Ave, Middletown, OH 45044** is more fully described in Attachment A and Attachment A is incorporated herein by reference. There is probable cause to believe that evidence of a crime; contraband, fruits of crime, or other items illegally processed; property designed for use intended for use; or used in committing a crime – namely 21 U.S.C. § 846 (conspiracy to possess with intent to distribute); 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance); and 21 U.S.C. § 843(b) (use of communication facility to commit felony) – exists and can be found at the residence located at **612 20th Ave, Middletown, OH 45044**. A list of the specific items to be seized from the premises described above is attached hereto as Attachment B and Attachment B is incorporated herein by reference. Based on my training and experience, as detailed above I believe that there is probable cause to believe that the items listed in Attachment B will be found at the premises described above.

4. All the details of the investigation are not included in this Affidavit; only information necessary to establish probable cause that evidence associated with the above listed offenses is located at **612 20th Ave, Middletown, OH 45044**.

5. Based on my aforementioned training and experience, I am familiar with the modus operandi of persons involved in the illicit distribution of controlled substances and as a result, know the following:

    a. It is common practice for drug traffickers to hide their assets, their addresses, their telephone numbers and beeper/pager services by using other person's names in order to avoid detection by law enforcement officials.

    b. It is common practice for drug traffickers to often maintain residences which are used as "stash houses" or locations for drug storage and distribution

        and use "nominees" to obtain telephone service, utility service, and other services to hide the true identity of the owner or person who will use that service.

c.     That drug traffickers often place assets in corporate entities in order to avoid detection of those assets by law enforcement officials.

d.     It is common practice, that even though these assets are in nominee names, drug traffickers will continue to utilize these assets by exercising dominion and control over them.

e.     It is common practice that drug traffickers possess large amounts of U.S. Currency in order to finance their ongoing illicit drug business.

f.     It is common practice that drug traffickers maintain books, records, receipts, notes, ledgers, airline tickets, money orders, and other documents relating to the transportation and distribution of drugs. Drug traffickers commonly front (provide drugs on consignment) to their clients. The books, records, receipts, notes, ledgers, and other documents are kept where the drug traffickers have ready access to them.

g.     It is common for drug traffickers to provide false information to law enforcement officials regarding their identity and the address of their actual residence.

h.     It is common that persons involved in drug trafficking conceal from law enforcement in their residences, vehicles, and businesses the following items: drugs, large amounts of currency, financial instruments, jewelry, automobile titles, other items of value and/or proceeds of drug transactions, and evidence of financial transactions relating to the acquisition and concealment of large sums of money resulting from drug trafficking activities.

i.     When drug traffickers amass large proceeds from the sale of drugs, they attempt to hide the true source of these profits, otherwise known as laundering the money. To accomplish this, drug traffickers many times utilize banks and/or financial institutions with their attendant services, including but not limited to, cashier's checks, money drafts, and letters of credit. Other entities used to launder drug proceeds include real estate firms and purported legitimate business fronts.

j.     Drug traffickers commonly travel to facilitate their trafficking activities. After purchasing drugs, traffickers commonly transport, or cause to be transported, drugs to areas in which they will be distributed. Common methods of transportation include, but are not limited to, commercial airlines, U.S. mail, and rental/private automobiles.

k.     It is common practice that drug traffickers commonly maintain books and similar documents which reflect names, addresses, and/or telephone

2

    numbers of their associates in the drug trafficking organization. This information can often be stored in cellular phones in places such as the contacts list.

l.  Drug traffickers often take, or cause to be taken, photographs of themselves, their associates, their property and their product, and that the photographs are usually maintained at the residences and/or businesses of drug traffickers. Photographs such as these can commonly be found and stored in cellular phones.

m.  Drug traffickers commonly have in their possession, (that is on their person, at their residence, and/or their business) weapons. Including firearms of various types. Firearms are used to protect and secure a drug trafficker's property which may include, but is not limited to, controlled substances, jewelry, narcotics paraphernalia, books, records, and U.S. Currency.

n.  Drug traffickers frequently maintain hidden compartments within their residence and vehicles to hide drug trafficking evidence (money, ledgers, drugs, etc.), bury evidence in containers such as shoe boxes, or hide the evidence in safes.

o.  The exact quantities, prices, dates, and methods of delivery of drugs are seldom discussed in detailed terms over the telephone. These details are usually agreed upon during face-to-face transactions. For this reason, most telephone conversations regarding drugs are very brief and often in code, understood by the traffickers and designed to mislead or confuse non-participants of the conversations. Drug traffickers make extensive use of cellular phones and text messaging beepers/pagers to facilitate contacting one another. When calling a beeper or text messaging, traffickers commonly input the number that should be called and sometimes add additional instructions in the form of additional digits. The structure of a drug distribution organization usually consists of sources of supply, wholesale distributors, retail distributors, and the ultimate consumers. The wholesale distributors often have more than one source of supply, and likewise the retail distributors often obtain drugs from more than one wholesale distributor. After receiving a quantity of drugs, the source of supply will often move the drugs to a location other than where he/she sells them to the wholesale distributors.

p.  Evidence of past communication between drug traffickers can be found in saved or deleted text messages, call logs, and other forms of electronic communication occurring over, stored in, or accessed by the cellular phone

## INVESTIGATION

6.  On or about March 14, 2019, during a review of postal mailings your Affiant identified and intercepted a package at the USPS Network Distribution Center, Cincinnati, Ohio. The package is further described as Priority Mail, USPS Tracking Number: 9505 5128 5731 9070 4425 68, addressed to Mashell, L. L., 612 20th Ave, Middletown, OH 45044-

3

7312, with a return address of La Nita, L., 2708 W. 141st Pl, Gardena, CA 90249 #2 (Here after referred to as "the Package").

7. Observation and USPS tracking information of the above listed Priority Mail package, by your Affiant indicated it was mailed from the Los Feliz Post Office, Los Angeles, California.

8. The Consolidated Lead Evaluation and Reporting (CLEAR) database system was researched by your Affiant regarding the listed return address, La Nita, L., 2708 W. 141st Pl, Gardena, CA 90249, #2. CLEAR is a public record data investigative platform available exclusively to law enforcement and other government investigators about people and businesses. The information obtained from the system indicated there is no La Nita, L. associated with that address. However, the system indicated there is a Lenita Lewis associated.

9. The CLEAR database was researched by your Affiant regarding the listed addressee on the package, Mashell, L. L., 612 20th Ave, Middletown, OH 45044-7312. The information obtained from the system indicated there is no Mashell, L. L. associated with that address.

10. On March 14, 2019, your Affiant arranged for Deputy Nick Poole, Hamilton County Sheriff's Office, to utilize a narcotics canine to check the package. Deputy Poole and his canine "Akim" are a currently certified narcotics team. The team is certified by the Ohio Peace Officer Training Commission and the Office of the Attorney General (Ohio). Deputy Poole reports that "Akim" passed all of his examinations and has successfully located hidden drugs in the past, and therefore your Affiant considers "Akim" to be reliable. On the same date, your Affiant met Deputy Poole at the USPIS Office, Cincinnati, Ohio, where the package listed above was placed in a separate room among several other similar packages and presented to narcotic canine, "Akim", who alerted positively to the presence or odor of a controlled substance upon the the Package.

11. On March 18, 2019, your Affiant obtained a federal search warrant and executed it on the Package. Inside the Package was black plastic wrapped around a hard item. Inside the black plastic was a yellow plastic case. Inside the yellow case was a clear plastic bag which contained approximately 1,380 grams white crystalline substance that field tested positive for methamphetamine, a scheduled II controlled substance.

12. Through my training and experience I am aware that crystal methamphetamine is a dangerous narcotic. As such, a pseudo substance ("sham") will be placed in the Package prior to attempting a controlled delivery of the Package.

13. On or about March 19, 2019, I will arrange for the Package to be delivered to **612 20th Ave, Middletown, OH 45044,** by a United States Postal Inspector posing as a United States Postal Service Letter Carrier. Upon delivery of the Package and the Package taken in to **612 20th Ave, Middletown, OH 45044,** the search warrant will be executed. Furthermore, if the Package is transferred to any vehicle or other property located within this Court's jurisdiction, this order authorizes law enforcement to make entry into the residence or vehicle to secure government equipment and evidence (the Package) as well

as secure the location until an application for a new warrant can be obtained.

14. **TRIGGERING EVENT: The search warrant will be executed if, and only if, the Package is accepted and taken into the residence located at 612 20th Ave, Middletown, OH 45044.**

## CONCLUSION

15. Based upon the facts set forth in this Affidavit, there is probable cause to believe that if the Package is delivered and taken into the aforementioned location, evidence of a crime; contraband, fruits of crime, or other items illegally processed; property designed for use intended for use; or used in committing a crime – namely 21 U.S.C. § 846 (conspiracy to possess with intent to distribute); 21 U.S.C. § 841(a)(1) (possession with intent to distribute a controlled substance); and 21 U.S.C. § 843(b) (use of communication facility to commit felony)– exists and can be found at the residence located at **612 20th Ave, Middletown, OH 45044.**

Further, your Affiant sayeth naught.

Andrew W. Kremer
United States Postal Inspector

Subscribed and sworn to and before me this 19th day of March, 2019

Stephanie K. Bowman
United States Magistrate Judge

5

## ATTACHMENT "A"

### Description of place to be searched

Based on the facts detailed in the Affidavit, the Affiant believes probable cause exists to search the following place, **if, and only if, the Package is accepted and taken into the residence located at 612 20th Ave, Middletown, OH 45044**:

1. 612 20th Ave, Middletown, OH 45044;
2. Furthermore, if the Package is transferred to any vehicle or other property located within this Court's jurisdiction, this order authorizes law enforcement to make entry into the location to secure/retrieve government equipment and evidence as well as secure location until an application for a new search warrant for the new location can be made.

The place to be searched is a tan siding, one story, single family residence with a white door and the numbers "612" in black, to the left of the door. A Photo of **612 20th Ave, Middletown, OH 45044** is below.



## Attachment "B"

### PROPERTY TO BE SEIZED

A. Log books, records, payment receipts, notes, and/or customer lists, ledgers, telephone numbers and other papers or electronic records relating to the transportation, ordering, purchasing, processing, and distribution of controlled substances, including information reflecting transactions for the purchase/sale of narcotics.

B. Papers, tickets, notices, credit card receipts, wire transfer receipts, travel schedules, travel receipts, passports, and/or records, and other items relating to domestic and foreign travel to obtain and distribute narcotics and narcotics proceeds, including, but not limited to airline receipts, vehicle rental receipts, credit card receipts, travel schedules, diaries, hotel receipts, truck logs, travel agency vouchers, notes, records of long distance telephone calls, e-mail, calendars and other correspondence.

C. Address and/or telephone books and papers reflecting names, e-mail and physical addresses and/or telephone numbers of individuals, partnerships, or corporations involved in drug trafficking and money laundering.

D. Financial records, financial statements, receipts, statements of accounts and related bank records, money, drafts, letters of credit, money orders and cashier's checks receipts, passbooks, bank checks, escrow documents, and other items evidencing the obtaining, secreting, transfer, and/or concealment of assets and the obtaining, secreting, transferring, concealment, and/or expenditure of money.

E. Electronic equipment such as pagers, computers, computer systems, cell phones, PDA devices including hardware, software, data contained in the main unit, printers, external modems, monitors, fax machines and/or other external attachments, electronic organizers, facsimile machines, cellular telephones, caller ID, telephone answering machines, police scanners and two-way radios.

F. United States currency, precious metals, coins, bullion, jewelry, and financial instruments, including, but not limited to stocks and bonds.

G. Photographs and/or photographic albums or video tapes and recordings of houses and other real estate, automobiles, and of other assets, persons, and/or controlled substances.

H. Indicia of occupancy, residency, and/or ownership of the premises and vehicles including, but not limited to utility and telephone bills, canceled envelopes, keys, deeds, tax bills, titles, and vehicle registrations.

    I.        Contraband, such as illegal drugs and other materials, paraphernalia and/or equipment and tools used in the drug trade.

    J.        Firearms or ammunition.